First case on calendar is Eng v. The City of New York. We'll hear you now. Good morning, Your Honor. Thank you. Good morning. On behalf of the appellant, my name is Brian Hussey for the Mary Eng. This is a case which has a lot of issues or principles in it that I submitted all very routine. They're probably checklist principles in terms of I don't think there's any dispute about the review is de novo of a 12B dismissal, the review is de novo of the denial of leave to amend, and the fact that the Equal Pay Act is not a specific intent. There's no intent, no intent, lack of intent defense. As set forth in my reply brief, this court has said that employment discrimination cases are not completely subject to the Tombly-Hickbill specificity requirements. It's a flexible plausibility. Didn't we also say in the Port Authority case that in an Equal Pay Act case, it's necessary to describe the duties, not just to say everybody does the same work, but to explain exactly what they do? Yes, sir, and I think that I tried to make the distinction that they were having class action of hundreds of attorneys, and we have four criminalist twos at a crime lab in Jamaica. Well, wait, you have four criminalist twos except you allege in the complaint that one of them is a criminalist four. Okay. That's on paragraph 19 of your complaint. And then you say the job duties of the plaintiff are attached as Exhibit 2. The job duties of the comparators are described in Exhibit 1 and or Exhibit 2, and Exhibit 2 describes four different jobs for four different types of managerial criminalists. So how are we to know that they're . . . how does that add up to they all do the same work? Well, my point on that is that it's at least an allegation for pleading purposes. If the court wants more specificity, the district court . . . Correct. That's . . . and the plaintiff alleged, I believe, in paragraph 14 that they were her job duties, and the next paragraph . . . Well, which one of the four is her job duties, and which one of the four are the job duties of the other three? It's not in the record. If we're going by the face of the complaint . . .  I'm asking you what in the complaint tells us which of these jobs, if any . . . I guess it has to be one of them because the plaintiff says her duties are described in Exhibit 2. You don't even say that the other three's jobs are described in Exhibit 2. You say either one or two, and in two, you've got four different jobs described with different responsibilities. I submit they're different functions of the same classification. But the district court said that it rejected that Exhibit 2, saying that it didn't indicate the source. I don't think that's required for pleading purposes. The plaintiff alleged that . . . That's not what I meant. I'm not asking you the source. You could have made it up out of your head because you're allowed to allege in the complaint what the duties are. I'm not concerned about the source. I'm concerned about what is alleged, and does it tell us that all these four people do the same work? Or does it tell us that maybe they all do different jobs? Comparable, similar, not that different, all in the same profession, but different. Okay. The point's taken that as pleaded, those allegations could be deemed conclusory. If that was the case, I think that I should have been granted leave to amend to say, I'll make the complaint 50 pages long if they want. Mr. Giussi, why should we give you another chance? Judge Bass did give you another chance. That's why we have Exhibits 1 and 2. Exhibits 1 and 2, she told you right from the beginning, would be unsatisfactory because job titles, classifications, or divisions are not sufficient to make this claim. You've got to show what the actual content is. Why do you think you should have another chance at pleading? I believe that this Court has held that leave to amend is freely granted unless futile. It was granted once. I mean, why twice? Pardon me? Why twice? It was granted once. Well, I don't think it's the number of times. I think it's whether or not it's futile. Well, if you were given leave to plead again, what would you tell us? What does she do every day, and what does John Doe No. 1, let's say, do every day? My client advised me that they all do ballistics, they all do urine, they all do chemical analysis, they respond to crime scenes and preserve evidence. In terms of the plausibility, I guess I'm jumping ahead. You're asking about the job titles. No, I'm not asking about the job titles. I'm asking what they actually do that you would tell us they actually do that is all the same. My client and I apparently didn't plead it properly. My client told me that they all do all those things on those pages. And to me, I didn't, well, I guess I should have alleged for each of the three other criminalists. But in terms of the flexible plausibility standard, I'd ask the court to consider the allegations of the amended complaints of paragraph 25 and 26 that we went to an EEO session with the police department, and they sent her a letter denying the claim, and I alleged, again, that the denial letter was an excuse that had been specifically rejected by a southern district court judge in a different case brought by a female police officer. That doesn't speak to job classification, but it does speak to plausibility. And this is . . . I could understand this more easily. I mean, not that my understanding counts, but I could understand this more easily if the parties were strangers before this. But it's the employer. They know what everyone in the lab does. This is a form de mura, really. And I didn't think they were enforced to this degree in an employment discrimination case, especially one that is not a Title VII with any intentional element. It's a status offense. And the . . . I guess the . . . I mentioned in my brief that I had looked at the court's forms, and I don't know . . . I didn't say anything to label those forms as strictly pro se, but they were box checking. If I'm given another chance, we will, you know, allege everything everyone does on a daily basis. It just doesn't . . . It seems to be just a de mura by someone who already knows what they're de muring to. And if it weren't for the Iqbal case, the notion would probably have never been made. And I thought that the subsequent cases by this court had said that that rule doesn't apply as strictly or in employment and statutory discrimination cases. Any other questions? You've reserved rebuttal? I did. Two minutes, please. Indeed. Good morning, your honors. May it please the court. My name is Diana Lawless. I appear on behalf of the city of New York. In this case, your honors, the district court properly granted the motion to dismiss the Equal Pay Act, because there's no plausible allegations that the plaintiff and her comparators were engaged in substantially equal work. As my adversary just essentially said, he basically says, well, I guess the allegations could be deemed conclusory, and that he would need an opportunity for another opportunity for leave to amend. The first complaint certainly was conclusory. The only allegation was that the acts were, their duties were substantially similar or lesser. The second complaint, all it did was attach these exhibits. As your honor, Judge Lynch pointed out. Are the distinctions in what different criminalists might do, are they sufficient to characterize the job as a different job? I'm not sure of your question, your honor. Well, there has to be equal work. Right. You can have three people sitting adjacent in desks, and they're doing equal work, but at any given time they could be doing something else. I think that it's true. So why isn't it enough to say these are the responsibilities of criminalists? We've got three criminalists here, and my plaintiff has paid $9,000 less than the others. Well, I think that none of the allegations are not. I think the first allegation is conclusory. We are all criminalists in the same title, and we do substantially similar or lesser things. That's not enough because there's no plausible allegations about job content. Job title is not enough. Well, I gave Mr. Hussey a hard time about Exhibit 2. Now I'm going to give you a hard time about Exhibit 2. When you look at these, they are all different. There are four different categories of section managers, and it's a little perplexing because I don't know exactly that all these four people are managers if they're all sitting there all day running lab tests. But nevertheless, there are four different manager jobs, but the actual list of things for each one are strikingly similar. Are they not? I mean, for example, can you tell me something that the scientific section manager criminalistics does that's distinct from what the scientific section manager controlled substance analysis program does? Well, I think the first thing is that this was a document that he attached. I don't think that he doesn't say where it comes from. I think it's hard to believe they all do. Well, suppose he just alleged this in the complaint. Suppose he didn't attach a purported document that comes from the implication is somewhere in the police department, but just alleged here's what the duties are and listed all the things that are on Exhibit 2. You wouldn't be asking him where do you get that. If it turns out it's wrong, if it turns out he's made it up out of his head and violated Rule 11, that will come out and there will be sanctions. But I don't think there is. Is there anything in our case law that says there has to be it has to be something from the job manual and it has to say that alleged that it's from the job manual? No, Your Honor. Certainly not the pleading stage. But what the allegation is, is the plaintiff's job duties are attached here to his Exhibit 2. And as you said, those are five different titles. So he's essentially saying that the plaintiff does all the five different sets of titles. Four, but who's counting? Sorry, Your Honor. I apologize. And then it says the job duties of the comparator employees are described in Exhibit 1 and or Exhibit 2. So the plaintiff's really unwilling to allege what the duties were that made her the same or different from her colleagues. It's really not clear what part of that exhibit refers to her duties, what could refer to their duties, whether they're the same or not. And it seems like there's a huge glossing over here and an unwillingness to make clear factual allegations about what the duties were and what were equal and what may not have been equal. Does your client know what they do? My client is the police department. My client presumably knows what they do. But they probably haven't told you, so you can't tell us what is different between the four jobs? Unfortunately, Your Honor, at the motion dismissal stage. I understand it's not in the record. I understand, but in fact, just as Mr. Hussey seems not to have a lot of details here, my concern is are we talking about something real or are we talking about a sloppy complaint? Are we talking about a real problem that, in fact, these people do radically different jobs and the plaintiff is trying to plead around that and get discovery and subject the city to a lot of expense by kind of hiding the ball that they all do something different? Or, as Judge Jacobs suggested, what if they all sit at the same counter each doing lab tests and one day one does ballistics and the other one does drugs and the next day they're bored so they switch and they basically are all doing the same thing? If that's really true and this is just a case of sloppy pleading, we're dismissing a case with prejudice where there's a pretty clear allegation by somebody who sits in the room with the other three that we all do the same work. Right, but as far as it goes with equal pay, I think there's another problem with the allegation where the plaintiff also alleges that there is a woman who does make more money than she does, that woman's a more junior woman employee to her. And if you look at even Exhibit 1, which is the job posting, it's not that every person makes the exact same amount of money in this title. One person makes more money and is a man of her age, roughly, and the other is a woman who makes more money and is of the same sex but is younger. Right. So, I mean, you only have three people. There's only so many variables you can get. And $9,000 is a very substantial increment. Well, I would say, Your Honor, there is a range for these. The city, within any title within the city, it's not always going to be exact dollar amounts. Where in the elements of this lies a difference in experience or education? Well, Your Honor, I think that there's no element for an equal pay act that has to do with experience or education. That does affect what people get. It does. Where would I find it? I think, I'm sorry, Your Honor, I think it falls into an analysis of the job content. If you explain this is what the job is, perhaps someone who's more experienced does different things for different reasons. Their duties are somewhat different or they have somewhat different experience in that. Skill. Different skill, and that would explain why. So I think it would go into the analysis of content. Basically, what you can't do here is to basically say, okay, we all do substantially equal work, but not lay out the facts explaining why, and then say that that's an equal pay act claim. What's the harm, though, in Mr. Hussey might be enlightened by this argument, giving him another opportunity to make the allegations that would fit under the equal pay act? Well, Your Honor, I think we're reviewing what the district court looked at. The only offer that Mr. Hussey made to both the district court and to this court was to just number the documents, the number of the. . . What's the problem with giving him another opportunity if there is, in fact, an equal pay problem? Well, he's already been given one opportunity by the district court. This would be this court giving him a third opportunity after the district court rejected his opportunity twice, and both times the district court said what you need to do is plead about the content. So I don't know that having been enlightened at this point is enough to remand and say that it should go back to the district court for a third chance. Certainly, this is a plaintiff who has counsel and is charged with the knowledge of the laws and being able to do the research and figure out what is needed to state a claim. But certainly, what was offered and what seems to be offered so far is just to attach more things or add numbers to the allegations from those pages, and that's not enough. I don't know if there's anything in rules requiring complaints to be construed in the light most favorable to the plaintiff that allows us to construe an allegation as just a typo. With respect to John Doe No. 1, who is alleged to make $11,000 more than the plaintiff, he's also described in the complaint as a criminalist four, and according to Exhibit 1, a criminalist four could make as much as $30,000 more than a criminalist two at the high end and $25,000 or so more at the low end of the range. Right. That's true, Your Honor. The way we did it, we took it the same way the district court did, which is that it could be a typo, because I believe he—this obviously does not help my side, but he did, I think, say they were all twos in the first complaint. Somewhere else he says they were all twos. So I understand if it was a four, but we just didn't make that point because we thought that it was— It's unlikely this is a four because the four would have to be making at least $25,000. Right. Well, no, because the range, the top of the range, two is only $4,000. Two is below. Right. Two is low and, you know, well. Okay. Right. Well, thank you, Your Honor. Thank you. If Your Honors have no further questions, we'll rest on our brief. Thank you. We'll hear rebuttal. Mr. Hersey. I believe the court stated that there were two comparators, the female and the male, but there's a total of three—there's a total of four criminalists that we're trying to compare. There was a young lady who was younger and the two males who were roughly contemporary. So there's a total of three people. With reference to the leave, it's up to this court. I mean, if the court deems it futile, you're supposed to deny leave. If you think that it's plausible, I suggest that—I submit that you're supposed to grant leave. I think the plausibility is the disparity in income, the employer's use of a rejection letter that was previously disapproved by the Southern District in another case, and if they want, I'll put the letter in the next complaint. I'll put the opinion in the next complaint. But I think it's really a question of form, and I don't think there's anything— No one is suggesting that you should amend your complaint to deliver it in a wheelbarrow. The question is very close. It's very simple. The other three criminalists have work to do. If the work is described as being the same or similar, and I think you probably have to say that their experience in education was the same or similar in order to demonstrate equal skill in performing it, and that's all you need to do. You don't have to, like, provide opinions from other cases. And with reference to Exhibit 1, it's clearly a job listing, and it sets forth how to apply for the job, and it sets forth the four pay ranges, and the job duties are Exhibit 2, and I apologize. I did not make that clear in the complaint. Could I shift briefly to a different question before you sit down? Sure. The district court also dismissed the various state law claims, which are not Equal Pay Act claims. There's no state equivalent that's a strict liability thing. These are discrimination claims. What is there in the complaint that would plausibly allege that there was intentional discrimination on the basis of either age or sex? I don't think it alleges intentional, Judge, and I don't know that I could honestly do that. But I would state that I did provide citations in the reply brief that this court in Velazquez said that the New York City Administrative Code allegations are not supposed to be subject to a Rule 12 or an Iqbal pleading analysis, not only a substantive analysis. And it's my understanding under the city code, you just have to allege the broadest thing, and everything else is an affirmative defense. And I think we meet that. That's why I put in the brief that if I don't get leave on the federal claim, that at least the city claim be severed and remanded. Thank you. Thank you. Any questions? Thank you both. We'll reserve decision.